UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| A. DOE minor child of S. Doe and <br> S. DOE parent of minor child A. Doe, <br>      Plaintiffs, <br><br> v. <br><br> JEAN MCGUIRE, Executive Director, METCO, Inc.; <br> METCO, INC., Board of Directors, in their Individual and <br> Official Capacity; JESSICA MURPHY, Director of <br> Special Education, in her Individual and Official Capacity; <br> AARON JONCAS, METCO, Inc., METCO Director, <br> Town of Concord, in his Individual and Official Capacity; <br> DIANA FROST RIGBY, Superintendent, Concord Public <br> Schools, in her Individual and Official Capacity; and JOEL <br> KRAKOW, PRS Specialist, Massachusetts Department of <br> Elementary & Secondary Education (DOE), in his <br> Individual and Official Capacity, <br>      Defendants. | C.A. NO. 1:17-cv-11750 |

### DEFENDANTS JESSICA MURPHY, AARON JONCAS AND DIANA FROST RIGBY'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT[1],[2]

### Preliminary Statement

S. Doe, on behalf of her minor child "A. Doe," maintains that the defendant School

Officials acted with "deliberate indifference" toward A. Doe in his efforts to enroll in the School

---

[1] On October 31, 2017, plaintiffs filed a Motion for Leave to File a Second Amended Complaint. The Second Amended Complaint seeks to add four new legal claims, all of which are based on Massachusetts state law. The School Officials intend to oppose this Motion and expect their opposition will be filed next week. In any event, unless and until this Court allows the plaintiffs' Motion for Leave to file a Second Amended Complaint, the School Officials' arguments are confined to those claims contained in plaintiffs' First Amended Complaint.

[2] Diana Rigby is no longer the Superintendent of the Concord-Carlisle School Department. Accordingly, pursuant to Fed. R. Civ. P. 25(d), the defendants' Motion to Dismiss is filed on behalf of the current Superintendent, Laurie Hunter.

District's METCO program.  The reality is that S. Doe failed to timely enroll A. Doe in the METCO program and, hence, A. Doe is not and has never been a student in the Concord Public Schools.  In fact, S. Doe has withdrawn her other two children from the School District's METCO program and, as a result, the Concord Public Schools currently has no connection whatsoever with the Doe family.  Hence, plaintiffs' First Amended Complaint should be dismissed because there is no present case or controversy between the parties.  In addition, although S. Doe did not pursue her administrative remedies through or with the Bureau of Special Education Appeals ("BSEA").  Finally, as set forth in more detail below, S. Doe's federal civil rights claims fail to state a cognizable cause of action.  For all of these reasons, the School Officials respectfully submit that the plaintiffs' First Amended Complaint should be dismissed in its entirety.[3]

### Statement of Facts

The School Officials start with some meaningful background.  Established by the Massachusetts Legislature in 1966, the Metropolitan Council for Educational Opportunity, Inc. ("METCO") is designed to develop and promote opportunities for integrated learning between urban and suburban school systems in the Greater Boston and Springfield areas.[4]   METCO is funded by the State Legislature and administered by the Massachusetts Department of Elementary and Secondary Education.  A.C., ¶3.  The Concord School system is one of approximately thirty-seven school districts that participate in the METCO program.  In the Concord School system,

---

[3] The First Amended Complaint ("A.C."), ¶¶42-43, refers to one of S. Doe's other children, L. Doe; however, it does not appear that S. Doe is seeking any relief on L. Doe's behalf.  On the contrary, L. Doe's knee injury while a student at the Willard School and the medical treatment he received in response thereto, is the subject of a separate claim S. Doe filed with the Bureau of Special Education Appeals.

[4] METCO is a voluntary program governed by Mass. Gen. Laws c. 76, §12A.  Additional information about METCO can be obtained at www.doe.mass.edu/metco/faq.html.

Kindergarten and Ninth Grade are the two entry points for METCO enrollment. There are approximately 140 METCO students in the Concord School system, including 44 who have Individualized Education Plans ("IEP"). As S. Doe correctly states, in order for an applicant to apply to the METCO program, the student must first register with METCO, Inc. and, once an applicant's name is reached on the waiting list, they are required to provide a variety of information including a completed METCO application within a "strict timeline." A.C., ¶5.

On January 21, 2010, A. Doe was registered with METCO, Inc. A.C., ¶17 and Exhibit 1.[5] On September 9, 2013, Aaron Joncas, the School Department's K-12 METCO Director sent a "Dear Parent" letter to all parents (like S. Doe), who already had other children enrolled in the Concord Public Schools, advising them that if they wish to enroll a child in the METCO program in either Kindergarten or Ninth Grade, then they must complete and return the enclosed "Sibling Request Form" by October 11, 2013.[6] The Dear Parent letter states **in bold** that, "Forms received after October 11, 2013 will not be considered for sibling placement and will be placed on a waiting list. Please adhere to the deadline." See Affidavit of Aaron Jonas, Exhibit A.[7] S. Doe did not sign

---

[5] Unfortunately, S. Doe did not actually annex the several Exhibits referred to in the First Amended Complaint. S. Doe did provide them to the School Officials' counsel on October 12, 2017. They were filed with the Court on October 17, 2017. (Document No. 9). Where appropriate, the School Officials have redacted the Exhibits annexed to the Affidavit of Aaron Joncas.

[6] At the time, A. Doe's two older siblings were enrolled in Concord's METCO program. On October 5, 2015 (L. Doe) and September 12, 2016 (K. Doe), respectively, S. Doe withdrew her two older children from the Concord Public Schools. Hence, the Doe family has had no connection whatsoever with the Concord Public Schools for over a year.

[7] For purposes of verisimilitude, the School officials provide this Court with the Affidavit of Aaron Joncas. The School Officials submit that the Court can take judicial notice of many, if not all, the statements contained in the Joncas Affidavit. The Court can also consider the exhibits annexed thereto as they are not in dispute. *Watterson v. Page,* 927 F.2d 1, 3 (1st Cir. 1993) (citing cases).

and return the Sibling Request Form nor does she contend otherwise. Nonetheless, Aaron Joncas included A. Doe on the "Sibling Request" list that he submitted to METCO on or about January 29, 2014. Joncas Aff., Exh. B. On April 1, 2014, Mr. Joncas sent another "Dear Parent" letter to parents of prospective METCO students, including S. Doe. A.C., ¶22; Joncas Aff., Exhibit C. As S. Doe correctly points out, starting in the 2014-2015 School Year, all incoming METCO Kindergarten students were assigned to the Alcott Elementary School. (Previously, the Concord Schools assigned Kindergarten students to one of the School District's three elementary schools.) Mr. Joncas' April 1st "Dear Parent" letter specifically states that "[t]wo tasks must be completed in order for your child to attend our schools in the fall." The first "task" was Kindergarten Registration at the Alcott School in Concord, and an additional orientation meeting in Boston with the date, time and location to be provided later.[8] The second task was a required 4-week Summer Readiness Program at the Wolcott School (July, 2014).

S. Doe did not complete either "task." S. Doe and A. Doe did not attend Kindergarten Registration Day (May 6, 2014) at the Alcott School. Instead, S. Doe claims she and A. Doe "completed the Registration Day at the Willard School . . .." A.C., ¶23; however, the Willard School did not hold a Kindergarten Registration. In any event, the next *required* orientation" was held on May 19, 2014, at the New Mission High School (Boston). S. Doe did not attend this program/orientation and she does not contend otherwise. On May 20, 2014, S. Doe met with Aaron Joncas and the School Department's Special Education Director, Jessica Murphy. During their informal meeting, Mr. Joncas advised S. Doe that the Kindergarten Registration/METCO had been completed and A. Doe was not on the list of students that he (Joncas) had forwarded to

---

[8] This information was provided in another "Dear Parent" letter dated April 22, 2014. Joncas Aff., Exh. D.

METCO (Boston).  Nevertheless, as a courtesy to her (S. Doe), Mr. Joncas told S. Doe that A. Doe would be placed on a Wait List.  According to S. Doe, it was during this meeting that Ms. Murphy made a number of inappropriate comments about children with autism, and that Mr. Joncas and Ms. Murphy "pressured" S. Doe into signing a Release so they (Joncas and Murphy) could speak directly with A. Doe's pediatrician and teacher.  Ultimately, after first agreeing to sign the release, S. Doe refused to do so.  A.C., ¶¶25-29; Joncas Aff., Exh. E.

On May 21, 2014, Aaron Joncas sent S. Doe an email in which he stated, in part, that without Ms. Doe's permission to speak with A. Doe's pediatrician ". . . we cannot move forward at this point and our only option would be to return [A.L.'s] folder to METCO, Inc."  Joncas Aff., Exh. F.  S. Doe responded by indicating that she would not allow anyone to discuss A. Doe's medical history "without my presence."  About 20 minutes later, Aaron Joncas responded to S. Doe by stating that "Jessica [Murphy] is willing to join a conference call so that you can stay on the phone while A. Doe's needs are being discussed."  Mr. Joncas concluded by stating that, "[i]f we have not been able to speak with [A. Doe's] providers before Wednesday, May 28, I will have to return his application."  Joncas Aff., Exh. G.  For logistical reasons, Jessica Murphy was unable to speak to A. Doe's pediatrician and this phone conference never occurred.  Accordingly, in June, 2014, S. Doe was advised that A. Doe's student file had been returned to METCO.  A.C., ¶5.  S. Doe then filed a complaint with the Mass. Department of Elementary and Secondary Education ("DESE").  *Id., ¶*36.  On October 30, 2014, Joel Krakow from DESE, sent S. Doe a "Closure Letter" advising her that DESE ". . . lacks evidence to make a finding that the student's disability and/or Special Education needs were the reason [A. Doe] was not granted enrollment in the Kindergarten program."  The Closure Letter also advised S. Doe of her right to seek mediation and/or a hearing through the Bureau of Special Education Appeals.  A.C., ¶¶36-37; Joncas Aff.,

- 5 -

Exh. H.  S. Doe did not pursue any claim before the BSEA.  Instead, S. Doe filed a complaint with

the Office of Civil Rights ("OCR") and the Massachusetts Commission Against Discrimination.

The OCR Complaint is still pending.  A.C., ¶40.[9]  According to S. Doe, her son (A. Doe) "then

five years old, spent numerous mornings crying" when A. Doe learned he would not be attending

the Willard School.  A.C., ¶43.  As noted in footnote 3, *supra,* the Amended Complaint states that

L. Doe "suffered anxiety and humiliation by Willard School staff" in connection with the treatment

she received for a broken arm; however, S. Doe does not appear to be seeking any relief on her

behalf.[10]

## ARGUMENT

## STANDARD OF REVIEW

Given this Court's familiarity with the applicable legal standard, the School Officials will

not repeat it here.  *See, e.g., Messere v. Clarke,* 2015 WL 5609959 *2 (D. Mass.).

### I.    There Is No Article III Case or Controversy.

"Article III of United States Constitution limits the 'judicial power' of the United

States to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll v. Ams.*

*United for Separation of Church & State*, 454 U.S. 464, 471 (1982).  To be justiciable, an actual

case or controversy must exist between the parties at all stages of the litigation, not merely on the

date the action was first initiated.  *Thomas R. W. v. Mass. Dept. of Education,* 130 F. 3d 477, 479

(1st Cir. 1997).  If the case and controversy requirement is not satisfied, the matter is moot, and

---

[9] The School Officials are not aware of and cannot locate the Charge of Discrimination filed with the Massachusetts Commission Against Discrimination.

[10] Apparently, S. Doe is seeking damages for her *own* emotional distress as well.  *See,* A.C., ¶¶61, 86 & 88.

must be dismissed. *Cruz v. Farquharson,* 252 F. 3d 530, 533 (1st Cir. 2001). A matter is deemed moot "when the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome." *Id.* As the Supreme Court has observed, to establish a case or controversy for Article III purposes, it is not enough that the party invoking federal jurisdiction have a "keen interest" in the issue. "That party must also have 'standing,' which requires, among other things, that it have suffered a concrete and particularized injury that is fairly traceable to the challenged conduct . . ." *Hollingsworth v. Perry,* ___ S. Ct. ___, 2013 WL 3196927 *6 (June 2013).

The party invoking federal court jurisdiction ". . . must seek a remedy for a personal and tangible harm." *Id.* (citation omitted). Here, the events of which Ms. Doe complains occurred in the 2013-2014 School year. Notably, A. Doe is not and has never been a student in the Concord Public Schools and it does not appear that S. Doe is seeking any injunctive or equitable relief on his behalf. S. Doe contends that the School Officials have violated the Americans With Disabilities Act by, *inter alia,* "failing to ensure that educational services were provided on an equal basis to a child with disabilities deliberately and with indifference." A.C., ¶52. To begin with, other than A. Doe's admission into the METCO program *writ* large, S. Doe has not identified any specific educational or related services or programs which she requested from the Concord Public Schools, which request(s) have been denied. Moreover, under well-established First Circuit law, S. Doe must first pursue any such claim before the Bureau of Special Education Appeals, which she has failed to do. *See Frazier v. Fairhaven School Committee,* 276 F.3d 52 (1st Cir. 2002). Indeed, as this Court observed in a similar setting, the "zone of interests protected under the IDEA, and thus triggering the exhaustion requirement" affords individuals the "opportunity to present complaints with respect to any matter relating to the identification, evaluation, *or educational placement of the child,* or the provisions of a free appropriate public education to such child." *Nickerson-Reti*

*v. Lexington Public Schools,* 893 F. Supp. 2d 276, 299 (D. Mass. 2012) (citations omitted) (emphasis added).  Accordingly, the School Officials submit that there is no Article III case or controversy between the parties.  *See, e.g., Operation Clean Government v. Rhode Island Ethics Commission,* 315 F. Supp. 2d 187, 193 (D.R.I. 2004); *see also, Libertarian Ass'n. of Massachusetts v. Secretary of the Commonwealth*, 462 Mass. 538, 547 (2012) ("Declaratory relief is reserved for real controversies and is not a vehicle for resolving abstract, hypothetical, or otherwise moot questions.") (citation omitted).  Should the Court find otherwise, the School Officials submit that S. Doe's Complaint should be dismissed based on her failure to pursue any claim relating to A. Doe's non-admission to METCO before the Bureau of Special Education Appeals.

## II.    Ms. Doe's Several Section 1983 Claims Fail To State A Case Of Action.

The School Officials start with certain unassailable facts.  Every student in the METCO program is non-white, including, for example, A. Doe's two older siblings (prior to S. Doe's removing them from the Concord Public Schools).  This fact alone renders absurd S. Doe's claim that A. Doe was denied entrance into the METCO program on account of his race.  A.C., ¶46.  In addition, nearly one-third of the METCO students in the Concord Public Schools have an IEP. This fact renders equally absurd S. Doe's claim that A. Doe was denied entry into the Concord Public School system's METCO program because of his disability.  *Id.*  In any event, as discussed further below, all of the Plaintiff's Section 1983 claims are legally infirm.  The School Officials start with S. Doe's Equal Protection claim.

- 8 -

(i)    Equal Protection And Due Process Claims (Count One).[11]

The Equal Protection Clause of the Fourteenth Amendment generally requires that the government treat similarly situated individuals similarly. *See Aponte-Ramos v. Alvarez-Rubio,* 783 F.3d 905, 908 (1st Cir. 2015). In order to prove an Equal Protection violation, S. Doe must establish that, compared with other similarly situated individuals, "[A. Doe] was selectively treated . . . based on impermissible considerations such as race, religion, [or] with intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Id.* (quoting *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 9 (1st Cir. 2007)).  In this regard, S. Doe has not identif[ied] "specific instances where persons situated similarly in all relevant aspects were treated differently, instances which have the capacity to demonstrate that [A. Doe] was singled . . . out for unlawful oppression." *Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995) (internal quotation marks omitted) (quoting *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 19 (1st Cir. 1989)).  This shortcoming in S. Doe's pleading likely stems from the fact that all METCO students are non-white.  In addition, nearly one-third of Concord's METCO students have an IEP. Joncas Aff., ¶5.  Moreover, S. Doe has not alleged that the Concord School Department has adapted or implemented any policy relating to METCO admissions (or any other aspect of the

---

[11] The School Officials note that the heading in Counts One through Three reads, "42 U.S.C. 1983 & M.G.L. c. 12."  A.C., pp. 15-17.  Mass. General Laws, Chapter 12, refers to the Massachusetts Civil Rights Act ("MCRA").  It is well-established that MCRA was modeled after Section 1983 and the claims are essentially co-extensive. *Seitins v. Joseph*, 238 F.Supp.2d 366, 377-78 (D. Mass. 2003) (internal citations omitted).  Accordingly, as applicable to S. Doe's nascent MCRA claims, the School Officials incorporate by reference their arguments to S. Doe's Section 1983 claims.  The School Officials do note, however, that S. Doe does not allege that former Superintendent Rigby did anything that interfered with her son's constitutional or civil rights, whether through "threats, intimidation or coercion" or otherwise.  Accordingly, Plaintiffs' MCRA claim against former Superintendent Rigby should be dismissed on this basis alone. *See, Correia v. Town of Westport,* 2017 WL 3940931, *8 (D. Mass.).

METCO program), with an intent to discriminate against some sub-set of METCO students, *i.e.*, METCO students with a disability. Therefore, any disparate impact claim, to the extent one can be divined from these pleadings, fails as a matter of law. *See Washington v. Davis*, 426 U.S. 229, 239, 96 S. Ct. 2040, 48 L.Ed.2d 597 (1976) (equal protection violation requires discriminatory purpose as well as discriminatory impact); *Soto v. Flores*, 103 F.3d 1056, 1067 (1st Cir. 1997) (same). In view of the foregoing, the Court should dismiss Plaintiffs' Equal Protection claim. *See, e.g., Schofield v. Clarke,* 769 F. Supp. 2d 42, 48 (D. Mass. 2011) (dismissing equal protection claim where plaintiff "failed to set forth any facts showing that he was treated differently from others who were similarly situated."). The School Officials now turn to plaintiffs' Due Process Claim.

S. Doe alleges that the School Officials violated the Plaintiffs' Due Process rights ". . . by deliberately interfering with the parent child relationship by inflicting trauma on plaintiffs by denying A. Doe the ability to attend school under [Chapter 76, §12A, because of his race and disability." A.C., ¶47. Assuming *arguendo* that the parent child relationship under these circumstances is a protected liberty interest under the Due Process clause, S. Doe received ample notice and an opportunity to be heard (by the School Officials), the touchstones of any procedural Due Process claim. *Matthews v. Eldridge,* 424 U.S. 319, 334 (1976). Not satisfied with this result, S. Doe filed a complaint with Joel Krakow, Program Assurance Specialist, Massachusetts Department of Education. *Id.,* ¶¶36-37. On October 30, 2014, Mr. Krakow issued a "Closure Letter" to S. Doe advising her that the DOE ". . . lacks evidence to make a finding that the student's disability and/or Special Education needs were the reason he was not granted enrollment in the Kindergarten program." Mr. Krakow further advised S. Doe of her right "to seek mediation and/or a hearing through the Bureau of Special Education Appeals, on the same issues addressed in this

letter." A.C., Exh. 8. This avenue of recourse more than satisfies S. Doe's procedural Due Process rights. In addition, any substantive Due Process claim fails because S. Doe's allegations come nowhere to meeting the "shocks the conscience" standard established by the First Circuit. *See., e.g., Pollard v. Georgetown School Dist.,* 132 F. Supp. 2d 208, 227-28 (D. Mass. 2015) (citing cases).

(ii)    Americans With Disabilities Act (Count Two).[12]

S. Doe maintains that, "[a]ll defendants have failed in their responsibilities under Title II to provide services, programs and activities in a full and equal manner to disabled minor child as described herein . . .." A.C., ¶52. At the outset, the School Officials note that the exhaustion requirement discussed above also applies to plaintiffs' claims under the Americans With Disabilities Act ("ADA"), and S. Doe does not allege that she first filed or pursued her ADA claim with the Equal Employment Opportunity Commission. *See, McInerney v. Rensselaer Polytechnic Inst.,* 505 F.3d 135, 138 (2d Cir. 2007); and, *S.S. v. City of Springfield,* 146 F. Supp. 3d 414, 418-19 (D. Mass. 2015). Next, the Amended Complaint does not allege that the former Superintendent, Diane Rigby, even knew about A. Doe's disability, let alone that she acted with deliberate indifference toward A. Doe. On this basis alone, as a matter of law, S. Doe cannot maintain an ADA claim against Superintendent Rigby. *See, e.g., Wilson v. Smith,* 567 Fed. Appx. 676, 679 (11th Cir. 2014); *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn,* 280 F.3d 98, 115 (2d Cir. 2001). In addition, S. Doe may not bring a claim under Section 1983 against the School Officials in their individual capacities for a violation of A. Doe's rights under the ADA. *See*

---

[12] "The same standards . . . apply to claims under the ADA and under the Rehabilitation Act." *Calero-Cerezo v. U.S. Dept. of Justice,* 355 F.3d 6, 11 n.1 (1st Cir. 2004). Accordingly, the School Officials treat Plaintiffs' ADA and Rehabilitation Act claims together.

*M.M.R.-Z ex. sel. Ramirez v. Puerto Rico,* 528 F.3d 9, 13 n.3 (1st Cir. 2008) ("Section 1983 cannot be used as a vehicle for ADA or other statutory claims that provide their own framework for damages.").[13]  With these limitations in mind, to pursue and ultimately prevail on her ADA claim, S. Doe must establish:

> (1) that A. Doe is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of A. Doe's disability.  *Parker v. Universidad de Puerto Rico,* 225 F.3d 1, 5 (1st Cir. 2000).

Of particular significance here, S. Doe must provide sufficient factual allegations to create a reasonable inference that the School Officials' decision she challenges was motivated by 'animus, fear or apathetic attitudes toward [her son's] disability." *Buchanan v. Maine*, 461 F.3d 158, 174-75 (1st Cir. 2006).  The Amended Complaint contains no such allegations.  The entirety of S. Doe's ADA-based claim is that the SPED Director, Jessica Murphy, allegedly stated during their meeting on May 20, 2014, that "[w]e don't like to take kids on the Autism Spectrum, because it can be litigious for the Town."  A.C., ¶26.  Even assuming *arguendo* Ms. Murphy made this comment, nearly one-third of the METCO students enrolled in Concord Public Schools have an IEP.  Indeed, S. Doe's middle child, L. Doe, was on an IEP when she entered the Concord Public Schools' METCO program.  Joncas Aff., ¶5.  Based on the foregoing, the School Officials submit that Count Two should be dismissed.

---

[13] The School Officials are aware that S. Doe may pursue a Title II claim against them in their official capacities.  *Henrietta D. v. Bloomberg,* 331 F.3d 261, 288 (2d Cir. 2003).  Still, named in their official capacities, S. Doe's claim lies against the Concord Public School Department. *Suprenant v. Rivas*, 424 F.3d 5, 19 (1st Cir. 2005).

      (iii)    Plaintiff Has Filed to State A Claim Under 42 U.S.C. §2000d a/k/a Title
           VI (Count Four).

By its terms, Title VI prohibits any person or entity which receives federal funds, from discriminating against any person based on race, color, or national origin.  Title 42 U.S.C. §2000d.[14]  The School Officials need not tarry.  There is no individual liability under Title VI and S. Doe's claim should be dismissed accordingly.  *Pollard v. Georgetown School Dist., supra*, 132 F. Supp. 2d at 230.

      (iv)    S. Doe Cannot Maintain A Section 1983 Claim Based On A Violation of
           State Law (Count Five).

S. Doe maintains that in denying A. Doe admission into the METCO Program, the School Officials violated Mass. General Laws ch. 76, §12A.  This claim is legally untenable.  S. Doe cannot maintain a Section 1983 claim premised upon the violation of Massachusetts' state law. *Baker v. McCollam,* 443 U.S. 137, 144-45 (1979).

      (v)    S. Doe Has Failed To State A Claim For Negligent Infliction Of
           Emotional Distress (Count Six).[15]

S. Doe maintains that the School Officials placed "undue restrictions" on A. Doe in connection with his entry into the METCO Program and their actions "continue to place emotional distress on plaintiff A. Doe and Family."  A.C., ¶¶84-85.  S. Doe claims that A. Doe cried for several days when he was advised that he would not be going to the Willard School; S. Doe does not state how these developments impacted her directly.  *Id., ¶*43.  S. Doe's claim for negligent

---

[14] Title VI does not apply to S. Doe's claim that A. Doe was not enrolled in METCO because of his disability.  A.C., ¶62.  *Vargas Alicea v. Consortum of Mayaguez/Las Marias,* 360 F. Supp. 2d 367, 372 (D.P.R. 2005), *aff'd* 173 Fed. Appx. 6 (1st Cir. 2006).

[15] For purposes of brevity, the School Officials will also address in this Section, S. Doe's claim for intentional infliction of emotional distress (Count Seven).

infliction of emotional distress is governed by the Massachusetts Tort Claims Act (the "MTCA") and suffers from several jurisdictional infirmities. To begin with, a plaintiff seeking to assert a negligence claim under the MTCA must make presentment within two years of accrual of cause of action. Mass. Gen. Law ch. 258, §4. S. Doe does not allege nor are the School Officials aware that S. Doe made presentment of her negligence claims, and the time to do so has lapsed. Hence, S. Doe's negligent infliction claim should be dismissed. *See Vasys v. Metropolitan Dist. Commn.,* 387 Mass. 51, 55-56 (1982). In addition, under the MTCA, any negligence-based claims lie only against a "public employer" as defined in M.G.L. ch. 258, §2. Hence, to the extent the School Officials are named in their official capacities in S. Doe's negligent infliction of emotional distress claim, S. Doe cannot pursue this claim because it is considered to be one against the Town of Concord/Concord-Carlisle School Department. *Villanueva v. Franklin County Sheriff's Office,* 849 F. Supp. 2d 186, 191 (D. Mass. 2012). Similarly, S. Doe cannot pursue her intentional infliction of emotional distress claim against the Town of Concord, because it is immune from such a claim under the MTCA, ch. 258, §10(c). *Canty v. Old Rochester Regional School Dist.,* 54 F. Supp. 2d 66, 70 (D. Mass. 1999); *Howcroft v. City of Peabody,* 51 Mass. App. Ct. 573, 596 (2001). This leaves S. Doe's intentional infliction of emotional distress claim against the School Officials named in their individual capacities.

To prevail on such a claim, plaintiff must show:

(1) that [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was "extreme and outrageous" and was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community;" (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by plaintiff was "severe" and of a nature "that no reasonable man could be expected to endure it."

- 14 -

*Agis v. Howard Johnson Co.,* 371 Mass. 140, 355 N.E. 2d 315, 318-19 (Mass. 1976) (internal citations omitted) (quoting Restatement (Second) of Torts § 46 (1965)).  The Massachusetts Supreme Judicial Court has made clear that the bar set by the second prong of the analysis is exceptionally high:

> [L]iability cannot be predicated [upon] mere insults, indignities, threats, annoyances, petty oppressions or other trivialities nor even is it enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

*Tetrault v. Mahoney, Hawkes & Goldings,* 425 Mass. 456, 681 N.E.2d 1189, 1197 (Mass. 1997) (quoting *Foley v. Polaroid Corp.,* 400 Mass. 82, 508 N.E.2d 72, 82 (Mass. 1987)); *see also, Kennedy v. Town of Billerica,* 617 F.3d 520, 530 (1st Ct. 2010) ("The conduct . . . must be beyond all bounds of decency and . . . utterly intolerable in a civilized community.").  (citation omitted). Here, the Amended Complaint IIED claim fails because the School Officials' conduct was hardly beyond "all bounds of decency" and because the Amended Complaint does not allege that either S. Doe or A. Doe suffered anything approaching what might be considered "severe" emotional distress.  In this regard, while the Amended Complaint states that A. Doe cried on several mornings when he learned that he would not be going to the Willard School, it does not state how S. Doe was impacted by these events at all.  Accordingly, S. Doe's IIED claim should be dismissed.  *See, e.g., Doe v. Bradshaw,* 2013 WL 5236110, at *13 (D. Mass.).

## CONCLUSION

WHEREFORE, the School Officials request that all of the claims against them contained in the First Amended Complaint be dismissed, with prejudice, together with such other relief this Court deems just and proper.

Respectfully submitted,

The Defendants,
JESSICA MURPHY, AARON JONCAS AND
DIANA FROST RIGBY,
By their attorneys,

**PIERCE DAVIS & PERRITANO** LLP

/s/ Adam Simms
Adam Simms, BBO #632617
John J. Davis, BBO #115890
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
asimms@piercedavis.com
jdavis@piercedavis.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on November 1, 2017.

/s/ Adam Simms
Adam Simms